UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THEODORE GINNERY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:06-CV-579 CAS |
| ) | |
| ALAN BLAKE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Alan Blake and Mary Beth Rowe's motion for summary judgment on plaintiff's claims for injunctive relief under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12112-12134 (the "ADA"). Plaintiff did not file a response and the time to do so has passed. For the following reasons, the Court will grant defendants' motion for summary judgment.

**Background**.

Plaintiff is a civilly-committed individual currently residing at the Missouri Sexual Offender Treatment Center ("MSOTC") in Farmington, Missouri. Plaintiff's complaint is brought under Title II of the ADA. The defendants are Alan Blake, superintendent of MSOTC, and Mary Beth Rowe, a registered nurse employed at MSOTC. In the complaint, plaintiff alleges that Rowe overrode "a doctor's orders" that plaintiff "should have a wheelchair for long distance." Complaint at 3. Plaintiff also asserts that he filed a grievance concerning the issue "to no avail the head of staff just close there [sic] eyes to these matters and let her practice what she wants if it be a doctor so be it or a nurse so be it she does what she wants." Id.

The statement of the relief sought by the complaint is as follows: "I wish to have the Court look into said matter and at best stop the practice of a registered nurse practicing as a doctor and to open the staff eyes to the matters at hand and to deal with it. [A]nd to have said Mary Beth Rowe remove[d] from the staff here and not to practice nursing at all." Complaint at 4. Plaintiff does not seek monetary relief in the complaint.

**Summary Judgment Standard**.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Anderson, 477 U.S. at 257; City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

2

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**Facts**.[1]

1. Plaintiff, Theodore Ginnery, is currently being civilly detained at the Missouri Sexual Offender Treatment Center located in Farmington, Missouri. Defs.' Ex. A, Deposition of Theodore Ginnery ("Ginnery Dep.") at 5, ll. 21-24.

2. Ginnery is being detained while awaiting commitment proceedings to determine if he is a sexually violent predator pursuant to the Missouri Sexually Violent Predators Act, Mo. Rev. Stat §§ 632.480, et seq. (2000). Defs.' Ex. B, Affidavit of Mary Beth Rowe ("Rowe Aff.") at ¶ 3.

3. Defendant Alan Blake is the Chief Operating Officer for MSOTC. Complaint at 2.

4. Defendant Mary Beth Rowe is a registered nurse employed at MSOTC. Rowe Aff. at ¶ 1; Complaint at 2.

5. Residents at MSOTC are housed in either the Hoctor building or the Blair building. Rowe Aff. at ¶ 4.

6. Ginnery is a resident of the Hoctor building. Rowe Aff. at ¶ 5.

---

[1]The Court adopts the Statement of Undisputed Material Facts presented by defendants in their Motion for Summary Judgment. This statement of facts is supported by defendants' affidavits, the deposition testimony of plaintiff and institutional documents. Further, plaintiff has not disputed defendants' statements of the facts as he failed to respond to the Motion for Summary Judgment. Because plaintiff failed to submit a statement of material facts as to which he contends a genuine issue exists, as required by Local Rule 4.01(E), for purposes of this motion plaintiff is deemed to have admitted all facts which were not specifically controverted. See Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999); see also Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under E. D. Mo. Local Rule 4.01(E)). The Court added paragraph 9 of the Statement of Undisputed Material Facts in order to reflect more fully the facts appearing in the record.

7. Residents eat their meals in the dining room which is located on the first floor of the Blair building. Rowe Aff. at ¶ 6.

8. The Blair building is approximately 30-40 yards from the Hoctor building. Rowe Aff. at ¶ 6.

9. Ginnery suffered a stroke in the early 1990s, and as a result has no feeling on his left side, is partially deaf in his left ear, and his leg gives out when walking long distances. Ginnery Dep. at 8-9, 16.

10. Ginnery alleges that he has leg and back pain which make walking long distances difficult. Ginnery Dep. at 16, ll. 20-21.

11. On March 16, 2006, Dr. Bramhall evaluated Ginnery and wrote an order stating that Ginnery could "ambulate to dining room with a cane." Defs.' Ex. C, Physician's Orders at 2.

12. On March 30, 2006, the order was modified to state that Ginnery could push or ride in a wheelchair in order to take his meals in the dining room. Defs.' Ex. C at 3; Rowe Aff. at ¶ 7.

13. Ginnery was provided a wheelchair to assist him in traveling from the Hoctor building to the Blair building for meals. Rowe Aff. at ¶ 7.

14. Ginnery is capable of walking. He uses a quad cane to walk around his housing unit. Rowe Aff. at ¶ 8; Ginnery Dep. at 16, ll. 22-25.

15. MSOTC has provided Ginnery a wheelchair to use for long distances. Ginnery uses this wheelchair every day to get to and from meals. Rowe Aff. at ¶¶ 7-8; Ginnery Dep. at 16, ll. 11-13.

16. Ginnery is not considered disabled. Nursing staff encourage him to ambulate as much as possible without the assistance of the wheelchair. Rowe Aff. at ¶ 9.

**Discussion**.

The defendants move for summary judgment on two grounds. First, defendants assert that plaintiff fails to demonstrate a prima facie case under Title II of the ADA. Second, defendants assert that injunctive relief, the only relief plaintiff seeks in the complaint, is moot.

Title II of the ADA prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of any of the services, programs or activities of a public entity. 42 U.S.C. § 12132. The term "public entity" is defined as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). In Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206 (1998), the Supreme Court held that Title II applies to state prisons. Cf. Damron v. North Dakota Comm'r of Corr., 299 F.Supp.2d 970, 976 (D.N.D. 2004) (prisoner's generic ADA claim against prison officials was properly construed as a Title II claim), aff'd, 127 F. App'x 909 (8th Cir. 2005).

To establish a violation of Title II, a plaintiff must establish that: "1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits, or other discrimination, was by reason of his disability." Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998).

Defendants assert that plaintiff cannot meet any of the three elements of the prima facie case necessary to establish a Title II violation.

1. **Qualified Individual with a Disability**.

Under Title II, a qualified individual with a disability is defined as:

[A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or

5

transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12132 (1995)

The first inquiry is to establish whether an individual is "disabled" as defined by the ADA. The applicable regulation under Title II of the ADA defines "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff's complaint is silent as to which definition of "disabled" is applicable to him. Defendants contend that plaintiff cannot establish that he is disabled under any of the definitions.

a. **Physical or Mental Impairment Substantially Limiting a Major Life Activity**

Courts apply a three-part test to determine whether a plaintiff has an actual disability under the ADA. See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) ("Williams"). First, the plaintiff must show the presence of a "mental or physical impairment." Id. at 194. The plaintiff must then show that the impairment affects a "major life activity." Id. Third, the plaintiff must show that the impairment "substantially limits" that major life activity. Id.

Defendants contend that Ginnery has failed to allege a "mental or physical impairment" and state that plaintiff's only complaint is that he experiences leg and back pain when he walks long distances. Under the ADA, a "physical impairment" includes "any physiological disorder or condition [affecting the] musculoskeletal [body system]." Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (quoting 45 C.F.R. § 84.3(j)(2)(i) (2005)). In addition to complaining of leg and back pain when walking long distances, plaintiff testified in his deposition that he suffered a stroke in the early

1990s, and as a result has no feeling on his left side, is partially deaf in his left ear, and his leg gives out when walking long distances. Ginnery Dep. at 8-9, 16.

Plaintiff's post-stroke condition affecting his left side may qualify as a "physical impairment" under the ADA. See Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 685-86 (8th Cir. 2003) (defendant conceded that plaintiff had a physical impairment under the ADA where he suffered a back injury that resulted in nerve damage including numbness in parts of the toes of his left foot and left leg, his left knee collapsed, and he walked with a cane on occasion); Mitchell v. Girl Scouts of the U.S.A., 2003 WL 22705121, *6-7 (S.D.N.Y. Nov. 17, 2003) (implying that plaintiff who had a post-stroke weakness on her right side that grossly affected her ability to walk, had a pronounced limp, and needed the assistance of a cane or walker had a physical impairment under the ADA). The Court need not decide whether plaintiff's condition is an impairment under the ADA, however, because plaintiff cannot establish other elements of the "qualfied individual with a disability" standard.

Even if plaintiff is assumed to have a physical impairment, "[m]erely having an impairment does not make one disabled for purposes of the ADA." Williams, 534 U.S. at 195. "Claimants also need to demonstrate that the impairment limits a major life activity." Id. Major life activities are "activities that are of central importance to daily life." Id. at 197. The Eighth Circuit Court of Appeals has held that walking is a major life activity. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999); see also Williams, 534 U.S. at 195 (noting that federal regulations include walking as a major life activity) (citing 45 C.F.R. § 84.3(j)(2)(ii) (2001)).

The Supreme Court has instructed that the word "'[s]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" Williams, 534 U.S. at 196 (quoting Webster's Third New International Dictionary 2280 (1976)). "The word 'substantial' thus clearly precludes

impairments that interfere in only a minor way with [a major life activity] from qualifying as disabilities." Id. (citing Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565 (1999)). As a result, to show that a major life activity is substantially limited, a plaintiff must have an impairment that "prevents or severely restricts" the major life activity. Wood, 339 F.3d at 685 (citing Williams, 534 U.S. at 198).

Plaintiff does not allege which major life activity is limited by his impairment. Because the complaint mentions only plaintiff's difficulty in walking and his desire to have a wheelchair, the Court interprets the complaint as claiming a limitation on the major life activity of walking. Defendants acknowledge that the ability to walk constitutes a major life activity, but assert that plaintiff "is perfectly capable of walking" and "ambulates with the help of a quad cane." Defendants state that plaintiff's use of a quad cane or wheelchair do not make him a disabled individual, because a person is not disabled where an impairment may be corrected by medications or other measures, citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999).

The Court agrees that plaintiff fails to show that his impairment substantially limits the major life activity of walking. Defendants are correct that mitigating measures, such as the use of artificial medical devices, must be taken into account in determining whether an individual is disabled. See Sutton, 527 U.S. at 475. In this case, plaintiff testified that he can walk short distances and that he walks in the housing wing using a quad cane. Ginnery Dep. at 8, 16. The medical records indicate that plaintiff could push a wheelchair as well as ride in it. Defs.' Ex. C at 3. Regardless of the extent to which plaintiff needs the assistance of a cane, he does not contend that he is unable to walk, but rather that he is unable to walk long distances.

This type of condition, although limiting to an extent, does not rise to the level of a substantial limitation under the ADA. See, e.g., Wood, 339 F.3d at 685 (where plaintiff was numb in parts of the toes on his left foot and his left leg, his left knee collapsed, and he walked with a cane on occasion, his ability to walk was moderately limited, but under Williams the restriction on walking was not severe); Gretillat, 481 F.3d at 661, 653 (where plaintiff had knee replacement surgery and subsequently suffered pain while walking and had difficulty walking long distances, her walking limitations were not substantial under the ADA); Mitchell, 2003 WL 22705121, *6 (plaintiff who had a post-stroke weakness on her right side that grossly affected her ability to walk, had a pronounced limp, and needed the assistance of a cane or walker, while limited in her ability to walk, did not have a substantial limitation under the ADA).

For the foregoing reasons, the Court finds that plaintiff is not "disabled" under the ADA, because he is not substantially limited in the major life activity of walking. The Court also finds there is no evidence in the record to support the arguments, not raised by plaintiff but addressed by defendants in the summary judgment motion, that plaintiff has a record of a disability or is regarded as disabled.

**b. Other Aspects of the Prima Facie Case**.

Because the Court finds that plaintiff is not disabled under Title II, it need not decide whether plaintiff can meet the second or third elements of the prima facie case under Title II. Nonetheless, the Court notes there are neither allegations nor evidence in that record to establish that plaintiff was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; or that such exclusion, denial of benefits, or other discrimination, was by reason of plaintiff's disability.

**Conclusion**.

For the foregoing reasons, the Court concludes that plaintiff is not disabled under the ADA. As a result of this conclusion, the Court need not address defendants' argument that the relief plaintiff seeks is moot. Defendants' motion for summary judgment should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED**. [Doc. 19]

An appropriate judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   19th   day of November, 2007.